Todd Blanche
Deputy Attorney General
Eastern District of Washington
Michael D. Murphy
Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, Washington  98901
(509)  454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CALUDGRIO JOSEPH BIANCO,<br><br>Defendant. | 1:25-CR-02062-SAB<br><br>PLAINTIFF'S SENTENCING MEMORANDUM |

The United States of America, by and through Michael D. Murphy Assistant United States Attorney, hereby submits the following Sentencing Memorandum.

Defendant was convicted of Drive by Shooting pursuant to the Assimilated Crimes Act, in violation of 18 U.S.C. § 13, RCW 9A.36.045 and Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j), 924(a)(2) by virtue of his guilty plea to those charges entered on November 18, 2025.  ECF 27.

I.    BASE OFFENSE LEVEL AND ENHANCEMENTS

GOV'T SENT. MEMO.                    1

The draft PSIR provides for a total offense level of 16, criminal history category of I, with a Guideline range of incarceration of 21 to 27 months to be followed by not more than 3 years of supervised release. Draft PSIR, ECF 30, ¶ 107.  The United States agrees with the calculations in the Draft PSIR.

II.    DEPARTURES AND OBJECTIONS

The United States does not seek any departure in this matter and does not have any objection to the Draft PSIR. However, the United States is seeking an upward variance and the parties have jointly agreed to recommend a sentence to the Court of between 36 and 120 months (3 to 10 years). Plea Agreement, ECF 27, p. 12.

The Guidelines are the starting point and the initial benchmark for the sentencing process. *Kimbrough v. United States*, 128 S. Ct. 558 (2007).  The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).  Upon appellate review, "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). In this case, as part of the plea agreement, the United States agreed to dismiss Counts 1 and 2, Assault with a Dangerous Weapon and Discharge of a Firearm During and In Relation to A Crime of Violence. ECF 1, 27, p. 7. The latter charge carries a penalty of no less than 10 years and up to a life sentence of incarceration. *See* ECF 3, 18 U.S.C. 924(c). The

plea agreement reached by the parties thereby significantly reduced Defendant's sentencing exposure. *See* ECF 30, ¶¶ 101-102. A reasonable sentence under the facts of this case is one which recognizes the severity of Defendant's conduct and the danger it posed to others, as represented by an upward variance from the appropriate Guideline range.

III.    SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

1. The nature and circumstances of the offense and the history and characteristics of Defendant.

Defendant is a twenty-six year old man with a high school diploma who was unemployed at the time of the incident leading to his instant conviction. ECF 27, ¶¶ 51, 69, 71. He has limited criminal history, successfully completing a deferral on a charge of Fourth Degree Assault and Third Degree Malicious Mischief. *Id.,* ¶ 47. On Saturday, March 15, 2025 at about 10 a.m., he drove by a residence in Wapato, Washington and fired two shots from his vehicle at the home, striking it both times. ECF 27, p. 6. He had driven by the home two prior times in the half-hour before shooting at it, as captured by a neighboring home's security camera. Exhibit A (Still from security camera 9:35 a.m.), Exhibit B (Still from security camera 9:37 a.m.), Exhibits C, D (Still from security camera 9:54 a.m. and detail of Exhibit C). Defendant eventually related to law enforcement that he merely shot out the window while going out for a ride to deal with anger, as an alternative to shooting himself. ECF 27, ¶ 16. Following the shooting, Defendant had returned to his girlfriend's

GOV'T SENT. MEMO.                                3

apartment and concealed the firearm, two magazines, and ammunition in a closet in the residence. *See Id.* ¶ 12.

Defendant's first statement to law enforcement on March 15, 2025 was made to Wapato Officer Ramirez, in which he stated that "Lil' Tone", "Lil Snake" and another person named Alex Plumeby got him to give him a ride and then "started busting rounds", then gave him the gun and ammunition to get rid of and threatened to harm his family if he reported them. Exhibit E. In an interview with Yakama Nation Officer Jensen on the same day, Defendant first stated that he let a friend named "Alex" borrow his vehicle and that his friend had only dropped it off shortly before Defendant was contacted by police. Exhibit F, p. 1. When questioned further by Officer Jensen, Defendant then related that "Sinner", "Big Loc" and "Lil' Snake" had threatened his family and compelled him to drive for them when they performed the shooting. Exhibit F, p. 2. When interviewed by FBI Special Agent Gutierrez and Yakama Nation Police Detective Beebe, Defendant blamed the shooting and the presence of a firearm in his vehicle on another friend. Exhibit G, pp 1-2. Only after being confronted with respect to that statement did Defendant assert that he shot out of the window as an alternative to shooting himself while driving around to blow off steam. *Id.*, pp 2-3. Special Agent Gutierrez later confirmed that the friend named by Defendant as the source of the pistol had not spoken to or seen Defendant in years and had not possessed a firearm.

The two shots fired by Defendant both pierced the front wall of a residence, striking on either side of a picture window. One of the projectiles travelled through the living room and an interior wall and the dining room before ultimately coming to rest in the house. ECF 30, ¶¶ 18-19.  Two of the residents were in the living room at the time. *Id.* The firearm Defendant used to shoot at the victims' house was reported stolen from a residence in Seattle approximately three months prior to the shooting. ECF 27, p. 7. Defendant is not a suspect in the theft.

"[A] sentencing court may rely on any evidence relating to a defendant's background, character, and conduct when considering the sentencing factors found in 18 U.S.C. § 3553(a)." *United States v. Christensen*, 732 F.3d 1094, 1104 n. 2 (9th Cir. 2013).  Accordingly, by statute Congress directs that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

The United States contends that many of Defendant's actions are inconsistent with his account of acting out by blindly firing out of his vehicle's window as a result of mental or emotional distress. First, there are Defendant's multiple false statements to law enforcement regarding the who performed the shooting and the origin of the pistol. Second, the fact that he drove by the residence three times in a half-hour period and then struck the home twice while firing from a moving vehicle casts doubt upon is claim to law enforcement that he was merely shooting at random without aiming.

Third, his removal of the pistol from his vehicle and then concealing it in his girlfriend's residence is more consistent with consciousness of guilt or harm caused than with unintentional "blowing off steam" by firing into the air. Even taking Defendant at his last word in his third law enforcement interview that he merely fired randomly with no intention to cause harm, the fact that he put two bullets into an occupied home, one of which passed completely through the interior of the house, including a room occupied by two people, demonstrates an extraordinary degree of criminal recklessness.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

A sentence of 120 months is appropriate to reflect the seriousness of the offense of shooting an occupied home from a moving vehicle with a stolen firearm. Further, a significant sentence would provide just punishment.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant's actions, whether extraordinarily reckless or a deliberate attempt to inflict harm on persons unknown to him, merit a significant sentence for both general and specific deterrence. A sentence of 120 months incarceration would both deter any future similar conduct by Defendant and would also serve to deter other persons from similar drive-by shootings.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

GOV'T SENT. MEMO.                                6

A sentence of 120 months incarceration, particularly when followed by a period of supervised release for him to reintegrate, would protect the public from further crimes for a significant period of time.

5.  <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

A sentence of 120 months imprisonment would provide Defendant with effective correctional treatment, including the opportunity to complete educational and vocational training. Although Defendant does have a high school diploma, he has limited work history and vocational training would be a benefit and assist his reintegration.

IV.    RESTITUTION

Restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664. Pursuant to 18 U.S.C. § 3664(d)(5), provides that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." The United States has sought restitution information from the homeowners, as three walls, a cabinet and a sliding glass door were all damaged by Defendant's shots. However, no request has been received yet. The United States requests that the Court set a restitution hearing in approximately 30 days in order to determine appropriate restitution and to provide an opportunity for restitution claims and supporting documentation be made available for

Defendant's review.

## V.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of incarceration of 120 months followed by a term of supervised release of 3 years and no criminal fine. Defendant must pay a $100 Special Penalty Assessment. Restitution is mandatory.

DATED this 4th day of February, 2026.

s/Michael D. Murphy
MICHAEL D. MURPHY
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and a copy was emailed to the counsel of record in this case.

s/ Michael D. Murphy
Michael D. Murphy
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
(509) 454-4425
Fax:  (509) 249-3297

GOV'T SENT. MEMO.                          8